**Russell Lee DUNCAN Jr., Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–9702.**

Court of Appeals of Alaska.

March 14, 2008.

---

Krista Maciolek, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

STEWART, Judge.

Russell Lee Duncan Jr. argues that the superior court erroneously denied his motion

to suppress. Duncan contended that the police illegally searched him when they contacted him following a citizen's complaint. We conclude that the police had probable cause to arrest Duncan, and that the search was a lawful search incident to arrest. Therefore, we uphold Duncan's conviction.

*Background facts and proceedings*

On May 17, 2005, Adam Glazer, the owner of a business in downtown Anchorage, called the Anchorage Police to complain about drug dealing occurring outside his business near the intersection of 4th and D Street. Glazer told the dispatcher that a drug deal happened a minute before he called, and also the night before. Glazer reported that he had a picture of "the guy today" and that the guy was "the only one out there." Glazer described the suspect's race, build, and the color and type of his clothing.

Anchorage Police Sergeant Dennis Allen was in the downtown area and heard the dispatcher's report on his radio. When he heard the report, he thought "it's probably Mr. Duncan." Sergeant Allen had contacted Duncan on "numerous occasions" in the past and, on several of those occasions, Duncan was suspected of drug sales.

Allen responded to the 4th and D Street area and saw Duncan dressed as Glazer described in his telephone call to the police. Allen contacted Duncan and checked him for weapons with a pat-down search. Allen found Chore Boy in Duncan's right pocket, but at an evidentiary hearing, Allen could not explain how he found the Chore Boy during the pat-down search.

Anchorage Police Officer James Cross also responded to the dispatcher's report. When Cross arrived in the area, Sergeant Allen turned Duncan over to Officer Cross. At that point, Cross also pat-searched Duncan.

Officer Cross was familiar with Duncan from prior contacts. Cross explained that he knew from experience that people involved with drugs often carried sharp objects like razor blades or needles. When Cross searched Duncan, he removed Duncan's hat and a piece of crack cocaine fell out of the hat. Cross found two other pieces of crack cocaine in the sweatband of the hat. Cross asked Duncan if he had anything else, and Duncan directed Cross to a crack pipe in his pocket.

The grand jury charged Duncan with one count of fourth-degree misconduct involving a controlled substance.[1]

Duncan moved to suppress the cocaine found by the police. Duncan argued that the pat-down searches conducted by the officers exceeded the lawful scope of a pat-down search and that the searches were not incident to arrest.

Superior Court Judge Larry D. Card denied Duncan's motion, ruling that the search was justified as incident to arrest.

*Discussion*

■ Duncan first argues that a pat-down search was not permissible in the circumstances of his case because the officers did not possess specific and articulable facts to support a reasonable belief that Duncan may have been armed. The State concedes that the discovery of Duncan's cocaine cannot be justified as a pat-down search in an investigatory stop. But Judge Card did not deny Duncan's motion on this basis. Judge Card ruled that the police had probable cause to arrest Duncan, and that the search was justifiable as one incident to arrest.

■ The police may conduct a warrantless search incident to arrest when (1) the arrest is supported by probable cause; (2) the search is roughly contemporaneous with the arrest; (3) the arrest is not a pretext for the search; and (4) the arrest is for an offense, evidence of which could be concealed on the person.[2] Duncan concedes that the second and fourth requirements are satisfied in his case. However, Duncan argues that the police did not have probable cause to arrest him before he was searched. Duncan also maintains that even if the police did have probable

---

1. AS 11.71.040(a)(3)(A).

2. *See State v. Joubert,* 20 P.3d 1115, 1118 (Alaska 2001) (citing *McCoy v. State,* 491 P.2d 127, 138 (Alaska 1971)).

cause, the arrest was a pretext to conduct the search.

"Probable cause to arrest exists if the facts and circumstances known to the officer would support a reasonable belief that an offense has been or is being committed by the suspect subject to the search."[3] The police can establish probable cause with reasonably trustworthy information provided by an informant.[4] Informants are normally designated as "police informants" or "citizen informants".[5] When a tip is provided by a "cooperative citizen, or an informant not from the criminal milieu[,] there is less need for establishing credibility of the informant."[6]

An ordinary citizen who reports a crime stands on a much different footing. He acts with an intent to aid the police in law enforcement because of a concern for society or his own safety. Since the citizen informer often provides information only once, there is little opportunity to establish credibility or reliability in the most common manner-comparison with accurate information provided in the past.

We hold that a valid arrest may be made on information provided by a 'citizen informer' and that the informer's prior reliability need not be established before the arrest. The only caveat placed on such a rule is that some of the details of the information must be verified before arrest occurs.[7]

To satisfy the requirement of some corroboration, the State suggests that the police can consider Duncan's reputation for drug dealing to consider whether there was probable cause to believe Duncan was committing an offense. There is support for using reputation evidence in cases from the Alaska Supreme Court. In *Eliason v. State*,[8] the court specifically noted that in *United States v. Harris*,[9] three justices of the United States Supreme Court condoned the use of reputation evidence in search warrant affidavits.[10] Our supreme court returned to this issue in *Keller v. State*.[11] In *Keller*, the court noted that a plurality of the U.S. Supreme Court approved the use of reputation evidence, quoting an excerpt from *Harris*:[12]

> We cannot conclude that a policeman's knowledge of a suspect's reputation— something that policemen frequently know ... is not a "practical consideration of everyday life" upon which an officer (or a magistrate) may properly rely in assessing the reliability of an informant's tip. To the extent that *Spinelli* [*v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) ] prohibits the use of such probative information, it has no support in our prior cases, logic, or experience and we decline to apply it to preclude a magistrate from relying on a law enforcement officer's knowledge of a suspect's reputation.[13]

In *Kristich v. State*,[14] the supreme court again returned to *Harris* and concluded that *Harris* "held that a police officer's knowledge of a suspect's reputation was a 'practicable consideration of everyday life' upon which a magistrate may properly rely."[15]

While *Kristich* may have given an expansive analysis of the *Harris* case, a critical analysis of the issue shows that an unexplained claim of a suspect's criminal reputation should not be credited when evaluating

---

3. *Id.* at 1118 (citations omitted).

4. *See Erickson v. State*, 507 P.2d 508, 517 (Alaska 1973).

5. *See Effenbeck v. State*, 700 P.2d 811, 813 (Alaska App.1985).

6. *Erickson*, 507 P.2d at 517.

7. *Id.* at 518.

8. 511 P.2d 1066 (Alaska 1973).

9. 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).

10. 511 P.2d at 1071 n. 16.

11. 543 P.2d 1211(Alaska 1975).

12. *Id.* at 1218 n. 12.

13. *Id.* (quoting *Harris*, 403 U.S. at 583, 91 S.Ct. at 2081–82).

14. 550 P.2d 796 (Alaska 1976).

15. *Id.* at 803 (quoting *Harris*, 403 U.S. at 583, 91 S.Ct. at 2082).

probable cause.[16]  As Professor LaFave concludes in his treatise on search and seizure, "a generalized assertion of criminal reputation, ... is not to be considered at all on the issue of probable cause." [17]

But here, the police knew more than Duncan's general criminal reputation.  Both Sergeant Allen ("Duncan and I go back quite a few years.") and Officer Cross had ongoing contact with Duncan in the downtown area.  Several of the contacts involved suspicion that Duncan was selling drugs, and led to earlier arrests of Duncan.  The police knew that the area outside Glazer's business is an area where "there's been a lot of drug activity" and an area where "we get a lot of calls for people ... doing drugs."  Thus, the police in this case personally knew Duncan and his criminal history and knew that the area where the informant reported that Duncan was drug dealing was an area with a reputation for drug activity.

A Florida case, *Chaney v. State*,[18] addresses similar issues to those raised in this case.  In *Chaney*, a citizen told a police officer that he had witnessed what he believed to be several drug transactions across the street from where he had been working.[19]  He told the officer he had seen people exchange money and items which he believed were drugs.[20]  The informant described the man conducting the transactions, what he was wearing, and that he saw the man take "items" out of his back pocket.[21]  The officer then went to the area, identified the suspect described by the witness, and when she approached him, put her hands on the back of his pants.[22]  The officer then reached inside the pocket and pulled out a large quantity of crack cocaine rocks.[23]

The trial court denied the appellant's motion to suppress the drugs based on the argument that the tip from the informant did not establish probable cause.[24]  On appeal, the court reviewed the totality of the circumstances to determine whether the tip was sufficient to establish probable cause.  The court held that the officer did not have probable cause to search the defendant stating that the record failed to provide any testimony "that the location described by the citizen informant had any prior history of drug transactions or arrests[,] or that the police officer had any prior knowledge of the appellant's involvement in drug dealing." [25]

Unlike *Chaney*, and as shown by the testimony of the police at the evidentiary hearing, Allen and Cross knew that the area around Glazer's business was an area known for drug activity.  And the police knew that Duncan was an individual who was regularly in that area and was associated with the sale of drugs.  Judge Card found that the officers' knowledge of Duncan's drug history was confirmed by Duncan's extensive history of criminal convictions involving drugs extending back to the 1980's.

In *Joubert*,[26] the Alaska Supreme Court reaffirmed its analysis that probable cause to arrest does not require a showing that criminal activity actually occurred, but requires only "a fair probability or substantial chance of criminal activity." [27]  Applying that standard, we agree with Judge Card's conclusion that the police had probable cause to believe that Duncan was selling drugs.

Duncan next argues that the officers' actions leading to Duncan's arrest were a pretext to search Duncan.  But Judge Card

---

16.  *See* 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 3.2(d), at 47–66 (4th ed.2004) (discussing the information to be considered in a probable cause determination).

17.  *Id.* at 62.

18.  956 So.2d 535 (Fla.App. 4th Dist.2007).

19.  *Id.* at 536–37.

20.  *Id.* at 537.

21.  *Id.*

22.  *Id.*

23.  *Id.*

24.  *Id.*

25.  *Id.* at 539.

26.  20 P.3d 1115 (Alaska 2001).

27.  *Id.* at 1119 (quoting *Van Sandt v. Brown*, 944 P.2d 449, 452 (Alaska 1997) (quoting *Murdock v. Stout*, 54 F.3d 1437, 1441 (9th Cir.1995))).

rejected Duncan's argument. He found that the police, acting on Glazer's information about the recent drug sale, had probable cause to arrest Duncan. The record supports Judge Card's ruling. The police responded to a citizen complaint about drug dealing, and there is no evidence supporting a claim that the police used this complaint as a pretext to search Duncan incident to arrest.

Finally, Duncan claims that the officers were not entitled to arrest him because the officers did not know whether Duncan had been selling marijuana or some other drug. Because delivery of less than one ounce of marijuana is a misdemeanor under AS 11.71.050, and because the officers did not see the transactions that Glazer reported to the police, Duncan argues that AS 12.25.030(a) does not authorize an arrest for a misdemeanor that was not committed in the officers' presence.

There are two answers to Duncan's claim. First, Duncan did not raise this issue in his pleadings in the superior court, nor did Judge Card rule on the issue. Normally, this court does not address search and seizure issues raised for the first time on appeal.[28] Next, probable cause is not a standard that requires certainty, only a "fair probability or substantial chance."[29] Under that standard, the information the police had when they contacted Duncan established a substantial chance that Duncan had committed a felony by selling a drug other than a small quantity of marijuana.

### Conclusion

The judgment of the superior court is AFFIRMED.

---

**28.** *See Moreau v. State,* 588 P.2d 275, 279–80 (Alaska 1978) (search and seizure claims ordinarily cannot be raised for the first time on appeal because such errors do not affect the fundamental fairness of the fact-finding process).

**29.** *Joubert,* 20 P.3d at 1119 (quoting *Van Sandt,* 944 P.2d at 452).